DECISION ON OBJECTION TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Hiram Isaac, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying compensation for permanent total disability, and to grant the requested compensation pursuant toState ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315, or, alternatively, to issue an order that complies with State exrel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) Relator has filed an objection to the magistrate's decision.
 {¶ 3} Relator contends generally that he is 61 years of age, has no transferable sedentary job skills, and is therefore permanently and totally disabled. However, as the magistrate pointed out, a lack of transferable skills does not mandate a finding of permanent total disability. State ex rel. Ewart v.Indus. Comm. (1996), 76 Ohio St.3d 139, 142. The vocational expert found that the injured worker's background demonstrated an ability to perform entry-level sedentary work. As the magistrate properly determined, this is some evidence to support the commission's decision.
 {¶ 4} Relator also contends that the commission has not considered all of the non-medical disability factors in this case. We find, however, that the magistrate adequately addressed this issue in her decision. The commission explained that relator's age is not an insurmountable barrier to employment because his work history and education were positive factors that favor continued employment. It is well-established that the commission has broad discretion to interpret work history as positive or negative. Ewart, supra. In the present case, the commission viewed the injured worker's education and work history as positive factors in making its determination that the industrial injuries have not precluded relator's ability to obtain remunerative employment. As the magistrate determined, relator has failed to show that this was an abuse of discretion.
 {¶ 5} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of relator's objection, we overrule the objection and find that the magistrate sufficiently discussed and determined the issues raised. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it, and deny relator's request for a writ of mandamus.
Objection overruled; writ denied.
 Klatt and Watson, JJ., concur. APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
[State ex rel.] Hiram Isaac, : Relator, : v. : No. 03AP-539 Vernay Laboratories, Inc. and : (REGULAR CALENDAR) Industrial Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION IN MANDAMUS {¶ 6} In this original action in mandamus, relator, Hiram Isaac, asks the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying compensation for permanent total disability ("PTD") and to issue a new order granting compensation pursuant to State exrel. Gay v. Mihm (1994), 68 Ohio St.3d 315, or, in the alternative, to issue an order that complies with State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, and State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167.
Findings of Fact:
 {¶ 7} 1. Hiram Isaac ("claimant") has three workers' compensation claims during his employment with Vernay Laboratories: a 1971 claim for a mid-back muscle strain (latissimus dorsi); a 1975 claim for lumbar strain and dysthymic disorder; and a 1992 claim for fractured wrists, concussion, left shoulder capsulitis, and bruises and lacerations.
 {¶ 8} 2. In January 2000, claimant retired from Vernay Laboratories.
 {¶ 9} 3. In April 2000, claimant took a job at a steel plant. In September 2000, claimant sustained a fourth industrial injury for a contusion of the left foot.
 {¶ 10} 4. In 2001, the steel plant closed, and claimant ceased working.
 {¶ 11} 5. In 2002, claimant filed a PTD application indicating that he graduated from high school and could read, write and do basic math.
 {¶ 12} 6. In July 2002, claimant was examined on behalf of the commission by Steven Duritsch, M.D., who found that claimant could perform sedentary work.
 {¶ 13} 7. Claimant was examined with regard to his psychological condition by Earl F. Greer, Ed.D., who found a psychological impairment of five percent and concluded that the allowed condition did not prevent claimant from returning to work.
 {¶ 14} 8. An employability assessment was provided by Randi J. Owen, who noted that claimant had performed skilled work of a "heavy" nature at the steel plant. Ms. Owen also made the following observations:
Education: The claimant has a 12th grade education * * *. The claimant can read, write and do basic math well, and he has been successful in obtaining and maintaining employment for (33) years prior to the last injury. Therefore, the claimant's education should not effect his ability to meet basic demands of entry-level jobs.
Work History: The claimant has successfully worked for (33) years. Therefore, the claimant has demonstrated the ability to meet basic demands of entry-level jobs.
* * *
* * * The claimant's background demonstrates the ability to develop academic and other skills required to perform entry level sedentary jobs. The claimant has shown the ability to work diverse jobs, which demonstrates the ability to learn new skills.
* * *
His strengths are education and stable work background, which are all positive vocational attributes. There are several Federal, State and County agencies he could tap into for job placement services, retraining and positive support for people re-entering the work force. The Job Training Partnership Act program (JTPA), Ohio Bureau of Employment Services (OBES), Ohio Bureau of Vocational Rehabilitation (BVR), and Career Source Network are some examples of job resources in his residential area.
Ms. Owen opined that claimant's age "could affect" his ability to meet the demands of entry-level employment. However, she concluded that, if Dr. Duritsch's opinion were adopted, claimant could perform a number of jobs within the sedentary category.
 {¶ 15} 9. In April 2003, the application was heard by a staff hearing officer, who denied PTD:
Claimant is a 61 year old male with a 12th grade education. His application for permanent total disability indicates that he can read, write and do basic math. His work history includes experience as a precision rubber helper, mill operator, and steel plant helper. The claimant has sustained four industrial injuries throughout the course of his career. The first industrial injury occurred on 11/04/1971 when, while working as a mill operator, he was lifting rubber and injured his latissimus dorsi. As a result of this claim, he required only conservative treatment. The next industrial injury occurred on 05/25/1975 when, while working as a mill operator, he injured his back while lifting rubber off the floor. Treatment in this claim was entirely conservative. The claimant was off work for 2 to 3 weeks and then returned to the same job. Claimant then sustained another industrial injury on 02/01/1992 when he fell off a ladder and broke both wrists. As a result of this claim the claimant required two wrist surgeries. He was off work for 6 months after which he returned to his former position of employment. He then retired from the employer in January of 2000. Claimant testified at the hearing that the retirement was due to the industrial injuries but offered no documentation to support this assertion. Claimant then accepted a job with American Buildings Co., a construction material company in April of 2000, just 3 months after the retirement. While at this company, the claimant sustained his final industrial injury on 09/15/2000. On that date, a steel beam fell on his left foot. Treatment was conservative and minimal. Claimant continued to work until the company closed in June of 2001.
Dr. Greer, a psychologist, examined the claimant on 07/09/2002 on the issue of permanent total impairment with respect to the claimant's allowed psychological condition in the 1975 claim. Dr. Greer's report indicated that the claimant had never been involved in psychological treatment. Claimant confirmed this at today's hearing. After examining the claimant, Dr. Greer opined that the claimant has a 5% permanent partial impairment due to his psychological condition and that the claimant is capable of returning to his former position of employment.
Dr. Duritsch, a specialist in physical medicine and rehabilitation, examined the claimant on 07/09/2002 on the issue of permanent total disability with respect to the claimant's allowed physical conditions. Dr. Duritsch found that the claimant has a 20% permanent partial impairment as a result of all physical conditions from all claims. He further opined that the claimant may be capable of light work but is at least capable of sedentary work.
Based on the reports of Dr. Duritsch and Dr. Greer, which are found to be persuasive, the Staff Hearing Officer finds that the claimant has the residual functional capacity to return to the work force in a sedentary capacity. Furthermore, when considering the claimant's non-medical disability factors, the Staff Hearing Officer finds that the claimant is not precluded from sustained remunerative employment and is, therefore, not permanently and totally disabled.
While the claimant's age of 61 is considered to be that of closely approached advanced age, it is not considered to be an insurmountable barrier to a potential return to the work force. A person of the claimant's age can normally expect to have 5 more years of useful productive years within which they can be employed in jobs with skills learned on the job. The claimant's 12th grade education is found to be a positive factor, considering that he can read, write and do basic math well. Therefore, his education should not affect his ability to meet the basic demands of entry-level jobs. Likewise, his work history is also found to be a positive factor with respect to his potential return to the work force. The claimant has successfully worked for 33 years, which demonstrates reliability and stability. This also demonstrates the ability to meet basic demands of entry-level jobs. The above findings are based on the vocational assessment report of Randi Owen, dated 11/15/2002. M[s]. Owen also indicates that the claimant's background demonstrates the ability to develop academic and other skills required to perform entry level sedentary jobs. The claimant has shown a[n] ability to work diverse jobs, which demonstrates the ability to learn new skills. This is an important factor in light of the fact that the claimant retired in January of 2000 and then found another job in April of 2000 with a different employer. The claimant worked at this new job until the new employer closed in June of 2001. It appears that the available evidence indicates that the claimant stopped working in June 2001 for reasons unrelated to his industrial injuries. In any case, the fact that the claimant was able to find a new job at the age of 58 demonstrates the ability to adapt and learn new skills. In light of this history, the Staff Hearing Officer finds no persuasive evidence on file which indicates that the claimant is not capable of returning to the work force in a sedentary capacity and learning new skills. Lastly, it is noted once again that the claimant left the work force in June of 2001 for reasons unrelated to his industrial injuries.
Therefore, because the claimant has the residual functional capacity to return to work in a sedentary capacity; because the claimant has positive non-medical disability factors, particularly with respect to his ability to obtain new employ-ment and learn new skills, the Staff Hearing Officer is persuaded that the industrial injuries have not precluded the claimant from returning to the work force in a sedentary capacity. Therefore, the application for permanent total disability is denied.
Conclusions of Law:
 {¶ 16} Claimant contends that the commission abused its discretion in evaluating the vocational disability factors in his case. Specifically, claimant argues that, given his age of 61 years and his history of employment, the commission had a legal duty to find him vocationally unable to perform sedentary employment.
 {¶ 17} With respect to the commission's consideration of the nonmedical factors, it is well established that the commission may view a high school education as a vocational asset. SeeState ex rel. Ellis v. McGraw Edison Co. (1993),66 Ohio St.3d 92 (stating that the commission may view the possession of a high school diploma as a vocational advantage even where testing shows grade-school level of abilities). Further, the Ohio Supreme Court has ruled that the commission may rely on a claimant's ability to read, write and perform basic math — even if not well — in concluding that the claimant is capable of performing an entry-level position. State ex rel. West v. Indus. Comm.
(1996), 74 Ohio St.3d 354. Here, the commission had evidence to support its finding of a high-school education and an ability to read, write and do math well. The magistrate concludes that the commission was within its discretion to find that these two factors were positive vocational factors.
 {¶ 18} With respect to work history, claimant argues that he currently lacks skills for sedentary work. However, a lack of existing skills is not dispositive. The Supreme Court has repeatedly stated that the commission must not limit its consideration to skills developed in the past but must consider the claimant's ability to learn a new job in the future. Stateex rel. Ewart v. Indus. Comm. (1996), 76 Ohio St.3d 139, 142; see, also, Stephenson, supra.
In the subject order, the commission explained at length why it believed that claimant was capable of learning new work. It focused on claimant's history of diverse jobs, which showed his ability to learn new skills. The commission particularly emphasized claimant's ability to obtain a new job in 2000, when he was an older worker and already had three of his four industrial injuries, and it further emphasized that claimant maintained that new employment until the plant closed. Moreover, the commission found that the history of successful work for 33 years demonstrated the desirable qualities of reliability and stability, which was within its discretion. Ewart, supra. In addition, the commission relied on the report of Ms. Owen, who concluded that claimant's background demonstrated a vocational ability to perform entry-level sedentary work.
 {¶ 19} With respect to age, the commission acknowledged that claimant was considered to be closely approaching advanced age, but it concluded that claimant's age was not an insurmountable barrier to employment. In reaching this conclusion, the commission relied in part on claimant's ability to find a new job when he was 58 years old, which showed that he was adaptable and able to learn new skills. In its order, the commission explained at length why it viewed claimant's work history and education as positive factors, and why it viewed those factors as outweighing the factor of age, and the magistrate concludes that the commission's interpretation was within its discretion. See, e.g.,State ex rel. Moss v. Indus. Comm. (1996), 75 Ohio St.3d 414
(upholding denial of PTD to 78-year-old claimant with an eighth-grade education and work history limited to housekeeping);Ewart, supra (explaining the broad discretion the commission has, as the finder of fact, to interpret a work history as positive or negative); State ex rel. King v. Trimble (1996),77 Ohio St.3d 58, 63 (stating that, although the evidence supporting denial of PTD was "not particularly compelling" to the court, the court would not substitute its judgment for the commission's).
 {¶ 20} The court's role in mandamus is limited. Where, as here, the commission has cited some evidence in support of its decision and provided a brief explanation of its rationale, the court does not disturb the commission's decision, even where the record may include abundant evidence that supports the contrary result. State ex rel. Pass v. C.S.T. Extraction Co. (1996),74 Ohio St.3d 373. Accordingly, the magistrate recommends that the court deny the requested writ of mandamus.
 /s/ P.A. Davidson
P.A. DAVIDSON MAGISTRATE